## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JEROME C. GRAY,

     Plaintiff,

     v.

THE DISTRICT OF COLUMBIA, *et al.*,

     Defendants.

C.A. No.: 06-01265 (TFH)

## DEFENDANTS LATONYA FALWELL, NACEL LAWRENCE, AND THE DISTRICT OF COLUMBIA'S  MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR MOTION FOR SUMMARY JUDGMENT[1]

Defendants Latonya Falwell (hereinafter "Falwell"), Nacel Lawrence (hereinafter "Lawrence"), and the District of Columbia (hereinafter "the District"), by and through counsel, move this Court for an order entering judgment in their favor pursuant to SCR-Civil 12(c), and/or SCR-Civil 56(c). Plaintiff has failed to present any evidence in support of his claim against Falwell, and has not met his burden of proof as to either the District and/or Lawrence. Because plaintiff's arrest was lawful, he cannot establish his false arrest claim filed pursuant to 42 U.S.C. § 1983, or under common law. This Court is not bound by plaintiff's characterization of his intentional tort claim as a negligence cause of action. Furthermore, plaintiff's failure to identify an expert witness pursuant to SCR-Civil 26(b)(4), precludes his ability to establish his negligent hiring, training and supervision causes of action. Moreover, there is no evidence that the District's customs, policies, or practices were the moving force behind plaintiff's alleged

---

[1] Plaintiff's counsel has represented that he will not be "advancing" any of the claims against defendant Latonya Falwell, nor is he going to advance some of the other claims including Count II, Intentional Infliction of Emotional Distress; Count III, Negligence; and portions of Count IV, Negligent Hiring, Training and Supervision. However, plaintiff's counsel was not willing to dismiss those claims until the pretrial conference. Therefore, in an abundance of caution, these defendants are moving to dismiss all claims.

injuries.  In fact, plaintiff's alleged injuries are *de minimus* and are not actionable against the herein-named defendants.  Even if plaintiff could prevail under his common law claims, plaintiff has no measurable damages that could be submitted to a jury without the jury engaging in prohibited speculation.  Lastly, the evidence is insufficient for an award of punitive damages against the herein-named defendants.  Further support for this motion is set forth in the accompanying memorandum of points and authorities attached hereto and incorporated herein.

WHEREFORE, defendants pray this Court that judgment be entered in their favor.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

_____/s/ Patricia A. Jones_____
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

_____/s/ Leticia L. Valdes_____
LETICIA L. VALDES [0461327]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 442-9845; (202) 727-6295
E-mail:  Leticia.valdes@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JEROME C. GRAY, | |
| Plaintiff, | |
| v. | C.A. No.: 06-01265 (TFH) |
| THE DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

## DEFENDANTS LATONYA FALWELL, NACEL LAWRENCE, AND THE DISTRICT OF COLUMBIAAND'S MOTION FOR SUMMARY JUDGMENT

In support of their motion for summary judgment, defendants Latonya Falwell, Nacel Lawrence and the District of Columbia (hereinafter collectively referred to as "defendants") state as follows:

### PRELIMINARY STATEMENT

On April 19, 2006, plaintiff Jerome C. Gray filed the instant action against Officer Latonya Falwell, Sergeant Nacel Lawrence, and the District of Columbia. *See* Complaint, generally.  Specifically, plaintiff alleges that on or about April 20, 2005, he was lawfully standing in front of the D.C. National Guard Armory at 2001 East Capitol Street, S.E., in Washington, D.C., when for "no apparent reason" he was arrested by Sergeant Nacel Lawrence of the Metropolitan Police Department.  *See* Complaint, at ¶ 10.  Plaintiff further alleges that after the arrest, he was taken to the Metropolitan Police Department's Sixth District Station to be booked. *Id.*, at ¶ 13. According to the plaintiff, acting desk sergeant, Office Latonya Falwell, failed to timely process him, resulting in an unreasonably long incarceration of the plaintiff.  *Id.*, at ¶ 13.

During deposition, plaintiff testified that on the day of the incident, Ann Young, a vendor in the District of Columbia, called plaintiff's girlfriend Brenda Sayles, also a vendor in the District of Columbia, to tell her that "the police [were] harassing [the vendors] in front of the Armory during the Nationals' game." *See* Plaintiff Jerome Gray's deposition at 9:17-22, 10:1-6, and 38:8-11, hereto attached as Exhibit 1. Plaintiff further testified that he "took Ms. Sayles over to the Armory to see Ms. Young." Gray dep. at 44:17-18. As plaintiff was sitting on the Jersey barricade in front of the D.C. armory, "Ms. Young saw the officer we know as Sergeant Lawrence, parked his car." Gray dep. at 54:19-22 and 55:1. Plaintiff testified that defendant Lawrence parked his vehicle "within five feet" of where the plaintiff was sitting. Gray dep. at 55:15-22 and 56:1-2. According to plaintiff, Sergeant Lawrence and Ms Young had a conversation right in front of him. "Ms. Young asked the sergeant why couldn't they sell the hats with the W on it." Gray dep. at 56:10-18, and 57:1-3. Plaintiff testified that defendant Lawrence replied that they couldn't sell the hats "unless it had an official tag on it." Gray dep. at 57:5-6.

Plaintiff testified that while this conversation was taking place, four more people joined the group including Pat Mudd, another vendor, and her helper named Steve, an unidentified vendor, and Brenda Sayles. Gray dep. at 64:9-22 and 65:1. Plaintiff further testified that defendant Lawrence told the vendors that "they could not sell that merchandise in front of the Armory because it was private property. They had to go up on the side, 18th Street and East Capitol, to sell those items." Gray dep. at 65:7-15. Plaintiff then interjected himself in the conversation between defendant Lawrence and the vendors by saying to defendant Lawrence: "Sir, that's not correct. These are licensed vendors and these are licensed spaces." Gray at 65:17-19. Defendant Lawrence reportedly asked the plaintiff who he was. Gray at 65:20-21.

Plaintiff testified that he did not provide defendant Lawrence with his name. Instead, he responded that he was a citizen "exercising my First Amendment right, freedom of speech." Gray at 65:20-22 and 66:1-2.

According to plaintiff, defendant Lawrence told him to leave the area, and he responded "Sir, I haven't violated any laws, I'm just voicing my opinion." Gray at 66:3-20. Plaintiff testified that "he was leaning against the Jersey barricade" with his hands "folded" saying to himself "this sergeant is out of control," and "he does not know the vending regulation." Gray at 67:1-4. Plaintiff testified that he stood up from the wall, "looked the sergeant straight in the eye" and said "Sir, am I under arrest." Gray at 67:4-6. Plaintiff claims that as he "turned away from [defendant Lawrence]," he was placed under arrest. Gray at 67:16-22 and 67:1-8.

Plaintiff was transported to the 6th District, and booked. Gray at 76:4-8. He avers that defendant arrived at the station a few hours after he did. Gray dep. at 82:22-83:22 and 84:1-2. Plaintiff testified that defendant Falwell asked him if he could walk, and said that "[he] couldn't tell [them] what [he] want[ed] done." Gray dep. at 83:16:-84:2. Plaintiff admits that defendant Falwell was not present during his arrest, and never touched him. Gray dep. at 106:21-107:1-5. In fact, other than talk to him, defendant Falwell did nothing else related to plaintiff. Gray dep. at 116:22-117:6.

Defendant Lawrence was deposed in this matter. In responses to plaintiff's question as to why he arrested plaintiff, defendant Lawrence testified that he was "interfering with our investigation." *See* Nacel Lawrence's deposition at 49:4-7, hereto attached as Exhibit 2. The plaintiff did not inform defendant Lawrence that he was a retired member of the Metropolitan Police Department or that he was carrying a concealed weapon. Gray dep. at 71:12-21. Defendant Lawrence also testified that plaintiff refused to identify himself when asked to do so,

and he believed plaintiff was loud and inciting a crowd.  *See* Lawrence's dep. at, 54: 8-13, 56: 1-7, 57:5-22 and 58-1.

Plaintiff did not designate any expert witnesses in this litigation.  See Court's docketing. As set forth below, these defendants are entitled to summary judgment on all asserted claims against them as a matter of law.

## ARGUMENT

### I.    Standard of Review Under SCR-Civil 12(c).

Under SCR-Civil 12(c), after the pleadings are closed, any party may move for judgment on the pleadings. Should the arguments and evidence relied on be limited to the allegations and responses in the pleadings, then Court must apply the same standard as applied for a motion to dismiss. *Nixon v. Sampson,* 580 F.2d 514 (D.C. Cir. 1978); *Dale v. Executive Office of the President,* 164 F. Supp.2d 22 (D.D.C. 2001). Should the court be presented with and accepts any matters beyond, or "outside the pleadings", then the court shall treat the motion as if filed under SCR-Civil 56.  *Dale,* 164 F. Supp.2d 22.  The court, however, may consider or take judicial notice of matters in the general public record, including records and reports of administrative bodies and records of prior litigation.[2] *Haynesworth v. Miller,* 820 F.2d 1245 (D.C. Cir. 1987); *Jane Does I v. District of Columbia and MRDDA,* 2002 U.S. Dist. LEXIS 24171 (D.D.C. 2002), *citing Cinel v. Connick,* 15 F.3d 1338 (5th Cir. 1994).

The Complaint must be liberally construed in favor of the plaintiff, and the plaintiff should receive the benefit of all reasonable inferences that can be drawn from the facts. *E.E.O.C. v. St. Francis Xavier Parochial School,* 117 F.3d 621 (D.C. Cir. 1997).

---

[2] The Defendants, as a part of this motion, will only introduce the record of his efforts to obtain habeas relief that ultimately proved to be unavailing.

II.    **Standard of Review Under SCR-Civil 56**.

"Summary judgment may be granted if the moving party demonstrates through the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of demonstrating the absence of any material issues. The standard for granting summary judgment is the same as that for granting judgments." *See* SCR-Civil 56. *See also, Musa v. Continental Insurance Co.*, 644 A.2d 999, 1001 (D.C. 1994), and *Ferguson v. District of Columbia*, 629 A.2d 15, 19 (D.C. 1993). SCR-Civil 56 must be construed with due regard not only for the rights of [plaintiffs] ... but also for the rights of [defendants] to demonstrate in the manner provided by the Rule, prior to trial, that the claims ... have no factual basis. *Celotex Corp. v. Carrett*, 477 U.S. 317, 327 (1986) By the very nature of the language of Rule 56(c),

> the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion....

*See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

Although the party moving for summary judgment has the burden of demonstrating the absence of any material facts and the right to judgment as a matter of law, the movant is not obligated to present supporting evidence. *Ferguson,* 629 A.2d at 19. Instead, the moving party need only assert that there is a lack of necessary evidence to support plaintiff's case. The burden then shifts to the non-moving party to show the existence of a genuine issue of material fact. *Id.*; *see also, Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 198 (D.C. 1991).

When deciding whether to grant a motion for summary judgment, a trial judge must "determine whether there is sufficient evidence upon which a reasonable juror could find by a preponderance of the evidence, that plaintiff, upon whom the burden of proof is imposed, is

entitled to a verdict." *Graff v. Malawer*, 592 A.2d 1038, 1041 (D.C. 1991).  In the absence of

such evidence, the court must enter judgment in favor of the defendant.  *Id.  See also, Hill v.*

*White*, 589 A.2d 918, 921 (D.C. 1991) ("[t]he burden on the non-moving party is [to

demonstrate] 'that sufficient evidence supporting the claimed factual dispute be shown to require

a jury or judge to resolve the parties' differing versions of the truth at trial.'"  (citations omitted).

"[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient" to defeat a motion for summary judgment.  *Graff* at 1041.

A factual dispute by itself is not enough to bar summary judgment. The party opposing

the motion must show that there is a genuine issue of <u>material</u> fact. See *Anderson*, 477 U.S. at

247.  To be material, the fact must be capable of affecting the outcome of the litigation; to be

genuine, the issue must be supported by admissible evidence sufficient for a reasonable trier-of-

fact to find in favor of the nonmoving party. *See Id*. at 248; and *Laningham v. United States*

*Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

**III.**     <u>**Plaintiff Has Failed to Satisfy SCR-Civil 8 and 9, And May Not Maintain This**</u>
        <u>**Action Against Defendant Falwell.**</u>

SCR-Civil 8 provides that:  "[a] pleading which sets forth a claim for relief, …shall

contain (1) a short and plain statement of the grounds upon which the court's jurisdiction

depends,…(2) a short and plain statement of the claim showing that the pleader is entitled to

relief, and (3) a demand for judgment for the relief the pleader seeks…."  SCR-Civil 9 provides

that "[f]or purposes of testing the sufficiency of a pleading, averments of time and place are

material and shall be considered like all other averments of material matter."  Other than make

conclusory statements that defendant Falwell failed to timely process plaintiff, which resulted in

an unreasonably long incarceration, plaintiff has failed to specifically identify what misconduct

was committed by defendant Falwell that entitles him to his requested relief.  See Complaint,

generally.  Because plaintiff has not satisfied the requirements of either Rules 8 or 9, dismissal of

this action is appropriate.

**IV.    Defendant Falwell is Entitled to Summary Judgment as Plaintiff has Failed to
        Present Proof of a Claim for Which Relief May Be Granted.**

Plaintiff testified that he was arrested by defendant Lawrence, and that he arrived at the

police station at approximately 7:30 p.m.  Gray dep. at 82:22 and 83:1-12. Plaintiff further

testified that his first encounter with defendant Falwell was at "approximately nine o'clock, nine

or ten when they change the shift" at the station.  Gray dep. at 83:14-22. Plaintiff then testified

that defendant Falwell came to the cell and asked him if he could walk, and did he want to go to

court.  In fact, the crux of plaintiff's allegations against defendant Falwell is that she responded

"You don't tell us what you want done."  *Id*.

Taking the facts in the light most favorable, and as presented by the plaintiff, defendant

Falwell's conduct does not rise to an actionable claim and therefore she is entitled to summary

judgment in this matter on all claims asserted against her.

**V.    Defendant Lawrence is Protected by Qualified Immunity and is Entitled to
       Summary Judgment.**

Plaintiff seeks to proceed against defendant Lawrence and the District of Columbia

under a theory of false arrest/false imprisonment.  However, plaintiff does not specify whether

Count I, false arrest and false imprisonment, is being brought under the common law or under 42

U.S.C. § 1983, or both.  Accordingly, these defendants will discuss plaintiff's claim under

common law and § 1983.

The issue in a false arrest case is whether the officer at the time of the arrest had a

reasonable good faith belief that his/her conduct was lawful, i.e., whether the officer had a

reasonable good faith belief that the suspect has committed or is committing a crime based on the

facts and circumstances known to him. *See Guegory v. District of Columbia*, 408 A.2d 967, 969

(D.C. 1979)(citations omitted). At common law, an officer making an arrest enjoys a privilege

for the arrest if it is based on probable cause. *See United States v. Bookhardt,* 349 U.S. App.

D.C. 317 (D.C. Cir. 2002) ["More than twenty-five years ago, this court stated that "an arrest

will be upheld if probable cause exists to support arrest for an offense that is not denominated as

the reason for the arrest by the arresting officer.") Hence, the court in *Bookhardt* held that the

fact that plaintiff was charged with other crimes for which there may not be probable cause or

that other crimes were discussed is not material under the law. What is material is that there was

probable cause for at least one crime committed by the defendant.

As defined by the Supreme Court, probable cause exists if "at the moment when the

arrest is made . . . the facts and circumstances within [the officers'] knowledge and of which they

had reasonably trustworthy information were sufficient to warrant a prudent man in believing"

that plaintiff had committed an offense. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991), quoting

*Beck v. Ohio*, 379 U.S. 89, 91 (1964). The existence of probable cause is a "'common sense'

determination, which turns on the 'practical considerations of everyday life.'" *United States v.*

*Gilliam*, 167 F.3d 628, 633 (D.C. Cir. 1999), quoting *Illinois v. Gates*, 462 U.S. 213, 231

(1983). "While each fact standing alone may be insufficient, the combination of all of the facts

can establish probable cause . . . and certain conduct that may appear 'innocent to a lay person

may have entirely different significance to an experienced [law enforcement] officer.'" *Id.*,

quoting *United States v. Catlett*, 97 F.3d 565, 573-74 (D.C. Cir. 1996).

Under 42 U.S.C. § 1983, a police officer making an arrest is generally shielded from

personal liability for civil damages by the doctrine of qualified immunity insofar as his or her

conduct does not violate clearly established rights of which a reasonable person would have

known. *Hunter v. District of Columbia*, 943 F.2d 69, 75 (D.C. Cir. l99l).  The purpose of qualified immunity is to protect governmental employees against insubstantial lawsuits which have the following societal costs: l) expenses of litigation; 2) diversion of official energy from pressing public issues; 3) deterrence of able citizens from acceptance of public office; and 4) the possibility that the fear of being sued will dampen the ardor of all but the most resolute individuals. *Harlow v. Fitzgerald*, 457 U.S. 800, 8l4 (l982).

Qualified immunity shields an individual officer from liability as long as his action could reasonably have been thought to be consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638 (l987). A police officer should prevail on the qualified immunity defense even if he is mistaken, if a reasonable officer could have believed that the action taken was not in violation of clearly established constitutional law. *Anderson*, 483 U.S. at 64l. *See also*, *District of Columbia v. Evans*, 644 A.2d l008, l0l5 (D.C. 1994). As noted by Justice Scalia in *Anderson*, *supra*, " ... it is inevitable that law enforcement officials will, in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials - like other officials who act in ways they reasonably believe to be lawful - should not be held personally liable." *Id.* at 641. Qualified immunity thus protects all but the plainly incompetent or those who knowingly violate the law.

There is no practical distinction between the torts of false arrest and false imprisonment. *Stevens v. Stover*, 727 F. Supp. 668, 671 n. 6 (D.D.C. 1990) (citing *Curry v. Giant Food Co. of D.C.,* 522 A.2d 1282, 1287 n.3 (D.C. 1987)).  The principles applicable to plaintiff's common law claims were summarized in *District of Columbia v. Murphy*, 631 A.2d 34 (D.C. 1993), *reaff'ed on rehearing* at 635 A.2d 929 (D.C. 1993), as follows:

> In actions for false arrest and false imprisonment, the central issue is whether the arresting officer was justified in ordering the arrest of the plaintiff; if so, the conduct of

> the arresting officer is privileged and the action fails. . . . The police officer, however, need not demonstrate probable cause in the constitutional sense. Rather, it will suffice if the officer can demonstrate that (1) he or she believed, in good faith, that his [or her] conduct was lawful, and (2) this belief was reasonable. . . . In evaluating an officer's claim that he or she acted in good faith in making an arrest, the trier of fact must consider the evidence from the perspective of the arresting officer, not of the plaintiff.

*Id.* at 36-37 (citations and internal quotation marks omitted).

In this case, plaintiff avers that he was falsely arrested/imprisoned for disorderly conduct. D.C. Official Code § 22-131 provides that "[w]hoever, with intent to provide a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby: (1) acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others; (2) congregates with others on a public street and refuses to move on when ordered by the police…." Based on this record, probable cause existed for the arrest. While plaintiff was arrested for disorderly conduct, he committed other crimes which support the arrest. For example, D.C. Official Code § 22-405, provides that "[w]hoever without justifiable and excusable cause, … impedes, … or interferes with any officer or member of any police force operating in the District of Columbia,…while engaged in or on account of the performance of his or her officials duties, shall be fined… or imprisoned…." Moreover, the District of Columbia unlawful entry statute provides for the punishment of anyone who remains on either private or public property without lawful authority and who refuses to leave on the demand of the person lawfully in charge. *See* D.C. Official Code § 22-3302. *See also, O'Brien v. United States*, 444 A.2d 946, 948 (D.C. 1982) ("the mere demand of the person lawfully in charge to leave necessarily deprives the other party of any lawful authority to remain"). *See also, Mary Carson, et al. v. U.S.,* 419 A.2d 996 (D.C. 1980), holding under the statute, individual citizens may not be ejected from public property on the order of the person lawfully in charge absent some additional, specific factor establishing their lack of a legal right to be there.

During deposition, defendant Lawrence testified on the day of the incident, he was working "to prevent illegal vending." Lawrence dep. at 22:8-20. According to defendant Lawrence, he was conducting an investigation regarding the potential sale of unauthorized merchandise, and plaintiff was interfering in that investigation. Lawrence's dep. at 22:12-20. Plaintiff admitted that he interjected himself in the discussion between defendant Lawrence, a police officer, and a citizen, and told the citizen that defendant Lawrence didn't know what he was talking about, and the citizen didn't have to answer defendant Lawrence's inquiries. Lawrence dep. at 46:16-22 and 47:1-2. Plaintiff also admits that during his exchange with defendant Gray, at least 6 persons were in the area. Gray dep. at 64:9-22 and 65:1. Defendant Lawrence testified that he noticed that pedestrian traffic in the area "was slowing" behind him, and a crowed was forming. Lawrence dep. at 54: 8-13.

Defendant Lawrence testified that he asked plaintiff for identification because he believed plaintiff was acting "irrational," "loud" and "boisterous." Lawrence dep. at 56: 1-7, 57:5-22 and 58-1. Defendant Lawrence testified that plaintiff refused to provide identification to him. Lawrence dep. at 57:15-22 and 58:1. See also, Gray dep. at 65:20-22 and 66:1-2, in which he admits that he did not provide the requested information. Lastly, plaintiff testified that defendant Lawrence told him to leave the area, and he responded "Sir, I haven't violated any laws, I'm just voicing my opinion," and was thereafter arrested for disorderly conduct. Gray at 58:13-22, 59:1-5, and 66:3-20. Because defendant Gray was conducting an investigation, that provided him additional authority to request plaintiff leave the area in question.

Based on the facts in a light most favorable to plaintiff, defendant Lawrence cannot be held liable for the alleged wrongful arrest. Police officers should not be hindered by the threat of civil liability from attempting to perform their duties to the best of their abilities, as long as they

are not violating clearly established constitutional or statutory rights. *District of Columbia v. Evans,* 644 A.2d 1008, 1016 (D.C. Cir. 1994). In this instance, reasonable police officers could have reasonably believed that there was probable cause to arrest plaintiff for disorderly conduct, or for any other valid purpose. See § 22-405, and 22-3302 . Even if defendant Lawrence was mistaken as to what he observed, he still enjoys a privilege and/or is entitled to qualified immunity because he acted in good faith, and reasonably under the circumstances. See Civil Jury Instruction No. 18-3 (2002), see also *Anderson*, 483 U.S. at 64l. As set forth in *Anderson,* qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Id.* There is clearly no evidence on record that defendant Lawrence is plainly incompetent or that he knowingly violated the law.

## VI.    <u>Plaintiff's Intentional and Negligent Infliction of Emotional Distress Claim Fails As a Matter of Law</u>.

Plaintiff's claims of intentional infliction of emotional distress against the herein-named defendants do not rise to the level of an actionable claim.  "Intentional infliction of emotional distress consists of (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *See Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C. 1984).  The record evidence does not support plaintiff's claim of severe emotional distress necessary to prevail on his claim of action.  Plaintiff cannot show that he suffered **severe** emotional distress as a result of his arrest, or that defendants' conduct was severe or outrageous. When asked during deposition if he had received any counseling, or if he had seen a psychiatrist or any other doctor or physician since the April 20, 2005, incident, plaintiff testified "no, ma'am." Gray dep. at 33:14-22.   Moreover, there is an absence in this record of evidence that the defendants' conduct was extreme and/or outrageous.   Gray dep. at 33:14-22 and 34:1-7.   Accordingly, plaintiff's claim fails as a matter of law.

**VII.    Plaintiff's Negligence Claim Fails as a Matter of Law.**

In Count II of the plaintiff's Complaint, he alleges that the defendants conduct constitutes "negligence." *See* Complaint at ¶ 22. The facts, as alleged by the plaintiff, do not support a claim for negligence.  Instead, even making all reasonable inferences in favor of the plaintiff, it is clear that his complaint can be read to allege only *intentional* torts, such as false arrest, and/or false imprisonment.

The D.C. Court of Appeals has rejected the notion that a defendant can commit a "negligent arrest."  A plaintiff cannot base a negligence action on allegations of excessive force, so too is a plaintiff precluded from claiming negligence from false arrest.  *See Stewart-Veal v. District of Columbia* , 896 A.2d 232, 235 (D.C. 2006).  Such an approach impermissibly combines two conflicting theories—negligence and false arrest—into a single cause of action, in essence pleading a non-existent cause of action.  In *Stewart-Veal*, the trial court dismissed a plaintiff's complaint of negligent misconduct arising out of an unlawful arrest.  *Id.*  The D.C. Court of Appeals affirmed the dismissal of the negligent arrest claim, holding that the plaintiff's negligence claim "is not separate and distinct from the false arrest claim; rather, it is intertwined with and dependent on that claim."  *Stewart-Veal*, 896 A.2d at 235 (citing *District of Columbia v. Chinn*, 839 A.2d 701 (D.C. 2003) and  *Sabir v. District of Columbia*, 755 A.2d 449 (D.C. 2000).

This principle—that intentional law enforcement action cannot be the basis of a negligence claim—is supported by sound public policy.  If courts were to recognize claims for negligent force, negligent arrest, or negligent prosecution, police and prosecutors would be second-guessed as to highly discretionary judgments in the exercise of their public duties, such as how to detain a suspect, what investigative leads to pursue, which witnesses to interview, what evidence to collect, and what charges to bring.  Under this scenario, every arrest or indictment

that did not result in a conviction would become a *prima facie* civil claim, thereby paralyzing effective law enforcement and the administration of justice. *Cf. Varner v. District of Columbia*, 891 A.2d 260, 274-75 (D.C. 2006); *Miller v. District of Columbia*, 841 A.2d 1244, 1248 (D.C. 2004); *Warren v. District of Columbia*, 444 A.2d 1, 4 (D.C. 1981) (*en banc*). Because a false arrest is deliberately recognized only as an intentional tort, plaintiff cannot prevail on his negligence claim.

Moreover, in order to prevail on a negligence claim, plaintiff must establish (1) the applicable standard of care; (2) a deviation from that standard by the defendant; and (3) a causal relationship between the deviation and the plaintiff's injury. *See Peters*, 527 A.2d at 1273; *Bell v. Jones*, 523 A.2d 982, 987 (D.C. 1986); *Meek v. Shepard*, 484 A.2d 579, 581 (D.C. 1984); and *District of Columbia v. Davis*, 386 A.2d 1195, 1200 (D.C. 1978). Plaintiff has failed to meet his burden of proof and his negligence claim fails as a matter of law.

## VIII. <u>Plaintiff's Claims for Negligent Hiring Training, and Supervision (Count IV) May Not Be Maintained</u>.

A plaintiff is required to put on expert testimony to establish his/her negligence cause of action where the subject presented is "so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson." *Peters,* 527 A.2d at 1273; *Davis,* 386 A.2d at 1200. Expert testimony in this case is mandated because the subject area, i.e. the District's hiring, supervision, training, and discipline of police officers are beyond the ken of the jury. *See Holder v. District of Columbia*, 700 A.2d 738, 740 (D.C. 1997), involving an off-duty police shooting incident, and in which the Court held that expert testimony was needed in the case because the subject area was beyond the ken of the jury. Because plaintiff has failed to identify an expert witness to set forth the applicable national standard of care, and to establish

the defendants' deviation therefrom, he cannot prevail on his negligent hiring, training or supervision causes of action.

**IX .** **Plaintiff Has Failed to Establish a Viable 42 U.S.C. § 1983 Claim Against The District of Columbia.**

Plaintiff seeks to hold the District liable for the alleged unconstitutional torts committed by its employees.  To hold a municipality liable under 42 USC § 1983, a plaintiff must show that the municipality's customs, practices, and/or policies were the moving force behind the alleged constitutional violation.  It is clearly established that there is no *respondeat superior* liability on the part of a municipality for the alleged constitutional misconduct of its employees.  *See Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978), holding municipal liability is restricted to cases in which "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers."

In the instant case, plaintiff cannot establish that his alleged injuries resulted from any unconstitutional policy of the District, or that a widespread and deliberate custom or practice regarding the arrest and detention of individuals was the moving force behind her stated constitutional violations.  Plaintiff's complaint fails to aver in any way the manner in which the District was the moving force behind his alleged constitutional violations.  *See* Complaint, generally.  Rather, the Complaint merely makes conclusory allegations that "the conduct of defendants District of Columbia, as set forth hereinabove, constitutes negligent hiring, training and supervision."  *See* Complaint, at ¶ 24. *See, City of Canton v. Harris*, 489 U.S. 378 (1989) (municipality may in restricted circumstances be held liable under § 1983 for constitutional violations where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact).

To prevail on a claim for improper hiring, training, supervision and/or discipline against a municipality either under a constitutional or common law theory, plaintiff needs expert testimony. *See Toy v. District of Columbia*, 549 A.2d 1, 7 (D.C. 1988). *See also, District of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C. 1987) (expert testimony required in criminology/law enforcement); *District of Columbia v. White*, 442 A.2d 159, 164-65 (D.C. 1982) (expert testimony required to determine if police breached standard of care); *District of Columbia v. Carmichael*, 577 A.2d 312, 314 (D.C. 1990) (expert testimony necessary to prove standard of care for protecting prison inmates from injury by other prisoners). Plaintiff's failure to identify expert testimony in this matter precludes his ability to establish his improper hiring, training, or supervision, under a constitutional theory as against the District.

## X.    Plaintiff's Alleged Damages Cannot Be Proven.

Plaintiff seeks to recover a monetary award against the herein-named defendants based on his common law claims, i.e. false arrest, negligence, and intentional infliction of emotional distress. *See* Complaint generally. In the District of Columbia, the primary purpose of compensatory damages in personal injury cases is to make the plaintiff whole. Proof of damages must be shown at trial. *See Croley v. Republican National Committee, et al.,* 759 A.2d 682 (D.C. 2000), holding that "while damages are not required to be proven with mathematical certainty, there must be some reasonable basis on which to estimate damages." Plaintiff did not seek medical or physical treatment for his alleged injuries, and thus would have no medical bills to present to a jury for consideration. *See* Gray dep. at 33:18-22 and 34: 1-7. In addition, plaintiff cannot seek lost wages that resulted from the subject incident because he was unemployed. *See* Gray dep. at 11:22-12:7. Based on this record, a jury would be unable to award compensatory damages without undue speculation. *See Courtney v. Giant Food, Inc*.,

221 A.2d 92, 94 (D.C. 1966), holding, jury should never be permitted to guess as to a material

element of the plaintiff's case. Plaintiff's inability to produce measurable damages that resulted

from defendants' alleged misconduct, defeats his ability to be compensated for his alleged

injuries.

**XI**.    **Plaintiff's Punitive Damages Claim Against Defendants Lawrence and Falwell Fails as a Matter of Law**.

Plaintiff seeks to recover punitive damages as against Lawrence and Falwell for their

alleged misconduct.  *See* Complaint under plaintiff's prayer for relief.  To prevail on a punitive

damages claim, plaintiff must establish the following elements:

1.     that the defendant acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of the plaintiff; **and**

2.     that the defendant's conduct itself was outrageous, grossly fraudulent, or reckless toward the safety of the plaintiff.

*See Civil Jury Instruction No.* 16-1 (2002).

Plaintiff cannot satisfy the necessary requirements to prevail on a punitive damages claim

because there is no record evidence to support that either defendant Lawrence or Falwell's

conduct rose to a level for which punitive damages may be awarded.  Therefore, plaintiff may

not prevail under a punitive damages theory as against defendants Lawrence and Falwell.

**CONCLUSION**

17

WHEREFORE, based on the record evidence in this case, defendants Latonya Falwell, Nacel Lawrence, and the District of Columbia are entitled to judgment as a matter of law on all claims asserted by plaintiff.

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

_____/s/ Patricia A. Jones_____
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

_____/s/ Leticia L. Valdes_____
LETICIA L. VALDES [0461327]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 442-9845; (202) 727-6295
E-mail: Leticia.valdes@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JEROME C. GRAY,

      Plaintiff,

      v.                                        C.A. No.: 06-01265 (TFH)

THE DISTRICT OF COLUMBIA, *et al.*,

      Defendants.

<u>ORDER</u>

      Upon consideration of Defendants Latonya Falwell (hereinafter "Falwell"), Nacel Lawrence (hereinafter "Lawrence"), and the District of Columbia's Motion for Judgment on the Pleadings, or alternatively, Motion for Summary Judgment, the Memorandum of Points and Authorities in support thereof, any opposition thereto, and the record herein, it is, this _____ day of _____ , 2008;

      ORDERED:  that Defendants' Motion for Judgment on the Pleadings is hereby granted for the reasons set forth in the motion; and it is,

      FURTHER ORDERED:  that judgment is hereby entered in favor of defendants Falwell, Lawrence, and the District of Columbia.

                                    _____
                                      Judge Thomas F. Hogan

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JEROME C. GRAY,

     Plaintiff,

     v.

THE DISTRICT OF COLUMBIA, *et al.*,

     Defendants.

C.A. No.: 06-01265 (TFH)

<u>ORDER</u>

Upon consideration of Defendants Latonya Falwell (hereinafter "Falwell"), Nacel Lawrence (hereinafter "Lawrence"), and the District of Columbia's Motion for Judgment on the Pleadings, or alternatively, Motion for Summary Judgment, the Memorandum of Points and Authorities in support thereof, any opposition thereto, and the record herein, it is, this _____ day of _____ , 2008;

ORDERED that Defendants' Motion for Summary Judgment is hereby granted; and it is

FURTHER ORDERED; that judgment is hereby entered in favor of defendants Falwell, Lawrence, and the District of Columbia.

_____
Judge Thomas F. Hogan