1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - x

JEROME GRAY,

        Plaintiff

    v.                    CA No. 06-01265 (THF)

THE DISTRICT OF COLUMBIA, et al.,

        Defendants

- - - - - - - - - - - - - - - - - x

ORIGINAL

    Deposition of SERGEANT NACEL A. LAWRENCE

           Washington, D. C.

       Thursday, October 18, 2007

             10:12 a.m.

Job No. 1-114550

Pages 1 - 102

Reported By:  Cindy L. Wilmoth, RPR

PLAINTIFF'S EXHIBIT 3



L.A.D. REPORTING & DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

12

1    A.    '97.

2    Q.    '97. Okay. So after you left the academy
3 the second time, where did you go?

4    MS. VALDES: Continuing objection, same
5 reason.

6    You can go ahead and answer.

7    A.    After I left the academy, my next assignment
8 with the police department was in the fifth district.

9 BY MR. LATTIMER:

10   Q.    And I take it as a sergeant?

11   A.    As an officer.

12   Q.    As an officer. Well, wait a minute. How did
13 you go from sergeant to officer?

14   A.    I was terminated.

15   Q.    When was that?

16   A.    I don't remember the exact date.

17   Q.    Okay. Maybe I'm not being clear enough. I
18 thought that you went from the training academy to 5D.

19   A.    No. I was terminated.

20   Q.    From the training academy?

21   A.    Yes.

22   Q.    So that would have been sometime in 1997?

13

1  A.  I'm not sure. It would be in that time
2  frame.
3  Q.  Why were you terminated?
4       MS. VALDES: Objection as to relevance.
5  BY MR. LATTIMER:
6  Q.  Why were you terminated?
7  A.  Conduct unbecoming.
8  Q.  I take it that you had a trial board?
9  A.  Yes.
10 Q.  And that's where the determination was made
11 and then you appealed that to arbitration?
12 A.  No.
13 Q.  How did you get reinstated?
14      MS. VALDES: Objection, same objection.
15 A.  The department ruled that my termination was
16 unfair, and I was fully reinstated with no break in
17 service. My punishment would be demotion.
18 BY MR. LATTIMER:
19 Q.  I got you. So it was a recommendation that
20 you be terminated?
21 A.  Yes.
22 Q.  And then you appealed that, and then there

DEPOSITION OF SERGEANT NACEL A. LAWRENCE
CONDUCTED ON THURSDAY, OCTOBER 18, 2007

14

1  was a determination that that punishment was too severe
2  for whatever the offense was, and you were then given a
3  demotion as opposed to a termination?
4      A.   I did not appeal it.  The corporation
5  counsel, I believe, went through the FOP, and they
6  worked out an agreement where several -- I believe it
7  was 23 of us who were terminated by then Assistant
8  Chief Sonya Proctor, they determined that she violated
9  trial board procedures, and we were reinstated.
10     Q.   Okay.  But in this -- so the punishment was a
11 demotion?
12     A.   Yes.
13     Q.   Well, let me ask you something.  Was there a
14 loss of pay?  In other words, was there a difference in
15 pay between when you were a sergeant and then you were
16 an officer?
17         MS. VALDES:  Objection as to relevance.
18     A.   I have to think about that one.  Yes, there
19 was.
20 BY MR. LATTIMER:
21     Q.   Okay.  Now, were you ever off work?  In other
22 words --

15

1    A.    Yes.

2    Q.    Okay. How long?

3    A.    I believe 18 months.

4    Q.    So after 18 months, you came back, then you

5  went to the 5D?

6    A.    5D.

7    Q.    So how long were you at 5D?

8          MS. VALDES: Same objection. Objection as to

9  relevance.

10         Go ahead. You can answer.

11   A.    Until I was promoted to sergeant.

12 BY MR. LATTIMER:

13   Q.    Okay. When did that happen?

14   A.    2004, March of 2004.

15   Q.    So you remember what year you came back to

16 5D?

17   A.    '98.

18   Q.    '98. Okay. So from '98 to 2004, you were at

19 5D?

20   A.    Yes.

21   Q.    And then, what, you take the sergeant's exam

22 again?

20

1   they officers?  Were they civilians?  Who were they?
2       A.   They were recruit officers assigned to IPS.
3       Q.   What is IPS?
4       A.   Institute of Police Science.
5       Q.   That's the academy?
6       A.   Yes.
7       Q.   So you had five recruit officers?
8       A.   Yes.
9       Q.   And those officers, were they -- was that
10  part of their training through the academy or was that
11  an overtime detail for them as well?
12      A.   I'm not sure.
13      Q.   Now, did you receive any specific training or
14  instructions with regard to performing your duties in
15  that particular role?
16      A.   No specific training.
17      Q.   How many times had you done that prior to
18  encountering Mr. Gray?
19           MS. VALDES:  Objection as to form.
20  BY MR. LATTIMER:
21      Q.   When I say done that, meaning acting in a
22  supervisory capacity on that particular overtime

DEPOSITION OF SERGEANT NACEL A. LAWRENCE
CONDUCTED ON THURSDAY, OCTOBER 18, 2007

26

1  Q.  So that's what I'm trying to understand is
2  how did you know what could or could not be sold by the
3  vendors?
4      MS. VALDES:  Objection, asked and answered,
5  but you can go ahead and answer.
6  A.  I did not know.
7  BY MR. LATTIMER:
8  Q.  Okay.  So maybe I'm not understanding.  You
9  were checking to see if they were selling licensed
10 materials?
11 A.  I was checking to see if they were licensed
12 to vend at that location.
13 Q.  All right.  That's not what you said
14 originally, so let's talk about that point.
15     So when you approached these two women, you
16 were trying to ascertain whether they were licensed
17 vendors?
18 A.  Yes.
19 Q.  And how did you do that?
20 A.  I didn't get a chance to.
21 Q.  Well, did you say anything to them?
22 A.  Yes.

58

1  A.  He refused.

2  Q.  What did he say?

3  A.  "I don't have to tell you anything."

4  Q.  Oh, he said that to you, "I don't have to
5  tell you anything"?

6  A.  (Witness nods.)

7  Q.  You have to say yes or no.

8  A.  Yes.

9  Q.  And then what happened?

10 A.  "I know my rights."

11 Q.  That's what he said?

12 A.  Yes.

13 Q.  And then what happened?

14 A.  I stopped Mr. Gray and placed him under
15 arrest.

16 Q.  So the arrest was for not producing ID?

17 A.  The arrest was for disorderly conduct.

18 Q.  Okay.  But you said that he was loud when he
19 said something to the women.  You said he was loud when
20 he said he didn't have to leave.  You said he was loud
21 when you asked him for ID, and you arrested him because
22 he didn't -- when he failed to give you ID?

DEPOSITION OF SERGEANT NACEL A. LAWRENCE
CONDUCTED ON THURSDAY, OCTOBER 18, 2007

60

1    Q.   Now, tell me which ones that he engaged in.
2  One, two, three, four, five or all?
3    A.   One and two.
4    Q.   One and two.  Any others?
5    A.   No.
6    Q.   All right.  So one says, "Acts in such a
7  manner as to annoy, disturb, interfere with, obstruct
8  or be offensive to others."  Who did he do that to,
9  number one?  I'm talking about number one.  How did he
10 annoy, disturb, interfere, obstruct or be offensive to
11 someone else?
12   A.   His actions prevented the free flow of
13 pedestrian traffic to the stadium from the armory.
14   Q.   But what we're talking about now is one.
15   A.   That's what I'm talking about.
16   Q.   "Acts in such a manner as to annoy, disturb,
17 interfere with, obstruct or be offensive to others."
18 And you're saying that his actions obstructed people
19 from getting to the stadium.  That was the basis for
20 number one?
21   A.   Yes.
22   Q.   And that was -- he was 70 yards away from the

DEPOSITION OF SERGEANT NACEL A. LAWRENCE
CONDUCTED ON THURSDAY, OCTOBER 18, 2007

62

1   A.   I had no further dealing with the case after
2   that.
3   BY MR. LATTIMER:
4   Q.   So you didn't go to court?
5   A.   I wasn't CANS'd to go to court.
6   Q.   Did you go paper the case?
7   A.   No.
8   Q.   Why?
9   A.   Because I didn't have to.  I don't remember
10  why.
11  Q.   Well, if you don't paper it, it doesn't get
12  filed, right?
13  A.   I don't know the disposition of the case.
14  Q.   Well, wait a minute.  You're the arresting
15  officer, right?  You have to say yes or no.
16  A.   Yes.
17  Q.   And as the arresting officer, the only way
18  any case gets filed is if you paper it, correct?
19  A.   Correct.
20  Q.   And they have a section in the U.S.
21  attorney's office solely that deals with papering,
22  correct?

65

1  attorney's office will have the final say, but an
2  officer can present it for papering, correct?
3      A.   Yes.
4           MS. VALDES:  Objection, compound.
5  BY MR. LATTIMER:
6      Q.   You didn't present this for papering, did
7  you?
8      A.   No.
9      Q.   Why is that?
10     A.   I don't remember.
11          MR. LATTIMER:  I want to go over your report
12 with you so I can make sure that I'm clear.  Let's take
13 a five-minute break.
14          (A brief recess was taken.)
15          (Exhibit Number 2 was marked for
16 identification and was attached to the transcript.)
17 BY MR. LATTIMER:
18     Q.   I'm handing you what is marked as number 2,
19 which is a police report in this case.  If you'll take
20 a moment to review it, let me know when you're done, I
21 want to ask you a few questions about that.
22     A.   Okay.